**Jesse R. LOVELACE, Individually and D/B/A Jesse Lovelace Construction Company, Appellant,**

v.

**SABINE CONSOLIDATED, INC., Appellee.**

No. C14–86–348–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 11, 1987.

Carl T. Schultz, Houston, for appellant.

Robert Scott, Barry Abrams, Houston, for appellee.

Before CANNON, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Sabine Consolidated, Inc., appellee, sued Jesse R. Lovelace, individually and d/b/a Jesse Lovelace Construction Company, appellant, seeking an accounting and money damages for breach of contract, breach of fiduciary duty, and fraud. Trial was to a jury which found for the plaintiff on all issues and awarded actual damages, punitive damages, and attorneys' fees. We affirm the judgment as modified.

In the spring of 1983, the City of Houston awarded two contracts for sewer con-

struction to Jesse Lovelace Construction Company, the lowest responsible bidder in the competitive bidding. Subsequently, Lovelace entered into two separate joint venture agreements with Sabine Consolidated, Inc., to share responsibility, control, and profits of the construction projects. A separate bank account was established for each joint venture. The initial payment received from the City for each project was deposited into the appropriate account. In August, however, Mr. Lovelace began diverting payments on the Market Street project to his personal account in contravention of the joint venture agreement. Although portions of the diverted payments were later transferred into the Market Street account, after January 1, 1984, Mr. Lovelace failed to deposit any payment from either project to the joint venture accounts. By February 1984, over one million dollars had been diverted, and Sabine sued for an accounting and damages.

The first trial of the case resulted in a judgment in favor of Sabine awarding it $450,000 in actual damages, $200,000 in punitive damages, and $100,000 in attorneys' fees. When Lovelace's motion for new trial was granted, Lovelace amended its pleadings, asserting counterclaims against Sabine for failure to provide promised consideration to the joint venture agreements. The second jury found approximately $950,000 in actual damages, $400,000 in punitive damages, and $110,000 in attorneys' fees. Lovelace now appeals the judgment of the second trial.

In its first point of error Lovelace asserts that the trial court erred in entering judgment because the joint venture agreements were illegal, and hence, unenforceable as a matter of law. The appellant argues (i) that the City of Houston ordinances, 83–527 and 83–903, prohibit the transfer or subletting of any portion of the construction contract, (ii) that the joint venture agreements were a violation of that ordinance, (iii) that ordinances have the effect of law, and (iv) that a contract which cannot be performed without a violation of the law is void and therefore cannot be enforced by our courts, citing *Lewis v. Davis*, 145 Tex. 468, 199 S.W.2d 146, 148–

49 (1947). Appellee contends that the agreements are not illegal in that they do not violate a penal statute or ordinance, and, alternatively, public policy against unjust enrichment outweighs any prohibition against enforcement of the agreements.

■ The specifications and general conditions for each of the construction contracts included a provision that "[t]he contractor shall not let or transfer this contract, nor any part thereof (excepting only for the delivery of material), without the consent of the City Council." The contracts between the City and Lovelace were incorporated by reference in the joint venture agreements; thus both parties had actual or constructive knowledge of the prohibition against any party other than Lovelace performing the work. Lovelace asserts that this provision of the City's contract had the force of a city ordinance. From this contention, Lovelace proceeds to show by case law that city ordinances have the effect of law. Thus, Lovelace argues, one who enters into an agreement with the contractor chosen by the City to do work covered by the contract has made an illegal contract, void and unenforceable as a matter of law; regardless of any injury caused by breach of the agreement, the trial court erred in not leaving the parties where it found them.

We do not accept the reasoning of the appellant. The prohibition of letting or transferring the contract is a provision of the contract with the City; it is not a provision of either City ordinance cited by Lovelace. Certified copies of both ordinances are a part of the appellate record. Each is a one page document by which the City Council of Houston "ordains" three acts:

1. Jesse Lovelace Construction Company is the lowest responsible bidder, and therefore the contract for the work described is awarded to Lovelace.

2. The City Council approves and authorizes the contract.

3. The ordinance will take effect immediately.

■ Conspicuously absent from the ordinance is any prohibition against letting or transferring the contract. There is also no language incorporating the contract by reference into the ordinance. Appellant's argument appears to be that the mere approval of a contract, its plans and specifications by city ordinance gives every provision the force of law, the infringement of which, even by one not a party to the contract, will be sanctioned as if it were a statutory violation. We know of no authority supporting such a contention. The *contract* clearly prohibited the contractor, *i.e.*, Lovelace, from entering the agreement with Sabine or any other contractor or subcontractor. The provision existed for the protection of the City and only the City can claim its benefits. Each joint venture agreement constituted a breach of contract by Lovelace, not an illegal contract. In contrast, the *ordinance* before this court contains no reference to letting or transferring the work. We hold that the joint venture agreements were not illegal as a matter of law. Appellant's first point of error is overruled.

■ The central issue of appellant's second point of error is whether the trial court erred in refusing to compel discovery by Lovelace of Sabine's records related to other construction projects accomplished without Lovelace's involvement. Lovelace contends that the projects were similar in many respects to those for which Sabine sought damages and further contends the projects were performed within the time period material to alleged lost profits on jobs subsequent to the Market Street and Esplanade projects. Lovelace asserts he sought to discover records of two projects, one in Bellaire and another in Austin. His attempt to discover records of the Bellaire project occurred in connection with the first trial of this case. We see no record that the request was renewed during the brief pendency of the second trial. Error, if any, related to discovery of the Bellaire project was not preserved for appeal. Our discussion will therefore concern the Austin project only.

Between the first and second trials, Sabine was working on a construction project in Austin, Texas, that involved a very deep trench for a sewer line. In September 1985, the sides of the trench collapsed, two construction workers were killed, and indictments for criminally negligent homicide were filed against Sabine's supervisors. Lovelace asserts that the records of the Austin project are relevant to his contention that he removed Sabine from working on the joint venture projects because Sabine was incompetent, lacked the expertise in deep trenches that it had represented it could contribute to the joint venture, and was not the prudent commercial contractor that it purported to be. Lovelace further argues that the records would have shown (i) whether Sabine was capable of making the profits it claimed it could have made on projects undertaken without the involvement of Lovelace and (ii) whether Sabine was actually available to perform the construction job in New Caney, Texas, for which it sought lost profits. Sabine defends its action and that of the trial court in refusing to permit discovery, contending that the information sought is irrelevant or, alternatively, inadmissible because any slight probative value is outweighed by the highly prejudicial effect.

■ Lovelace contends that the trial court's refusal to permit discovery of the Austin construction project denied it a fair trial and constitutes reversible error. The scope of discovery largely rests within the discretion of the trial court and the court's action cannot be set aside unless there is a clear showing of abuse of discretion. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985); *Tucker v. Gayle*, 709 S.W.2d 247, 249 (Tex.App.—Houston [14th Dist.] 1986, no writ). To support a reversal, the trial court's refusal to permit discovery must have been such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *First Employees Insurance Co. v. Skinner*, 646 S.W.2d 170, 172 (Tex.1983); *Liberty Mutual Insurance Co. v. Woody*, 640 S.W.2d 718, 721 (Tex.App.—Houston [1st Dist.]

1982, no writ). With respect to Lovelace's allegation that the information sought was essential to show that Sabine had neither the expertise to perform the Market Street and Esplanade jobs nor the ability to have reaped the high profits alleged on the joint venture, we hold that the trial court did not abuse its discretion in limiting the discovery. The parties sought to be deposed by appellant had been deposed prior to the Austin incident. Appellant does not complain by point of error that he was denied all opportunity to investigate Sabine's prior performance records. There were alternative methods of demonstrating the job performance, expertise, and profit history of a company that had been in business for thirty years. To be discovered, information need not be admissible at the trial; however, the trial court does not abuse its discretion in restricting discovery where the information sought does not appear to be reasonably calculated to lead to the discovery of admissible evidence. Tex.R. Civ.P. 166b(2)(a). The minimal probative value of information concerning expertise and profits on a job two years after the joint venture projects would be substantially outweighed by the prejudicial effect of the cave-in, deaths, and criminal indictments. Such evidence is not admissible under our rules of evidence. Tex.R.Evid. 403.

■ Appellant also alleged that the information sought to be discovered was essential to show that Sabine could not have made the profits it claimed it could have made on the New Caney project. Lovelace contends it was highly probable that the New Caney project, which was bid in the summer of 1984, was actually performed by the successful bidder at the time Sabine was working in Austin. Evidence of the lag time between bid and performance on multimillion dollar construction contracts as well as the duration of such projects is a part of this appellate record. From our review of this evidence and a comparison of the dates involved, it does seem probable that information sought by Lovelace concerning the Austin job would have led to the discovery of some admissible evidence relevant to Sabine's alleged lost profits on the New Caney contract. For reasons discussed later in this opinion, we reverse the award of damages to Sabine for lost profits on the New Caney project. Therefore, error, if any, committed by the trial court in not permitting limited discovery of the Austin project was harmless and not grounds for reversal and retrial. Tex.R.App.P. 81(b)(1). Appellant's second point of error is overruled.

Appellant's third and fourth points of error also concern the Austin project. Appellant complains that the trial court erred in not permitting him to cross-examine Sabine's president, Mr. Joseph Tantillo, on the Austin project and in not permitting the introduction of other evidence of that project that would show the jury Lovelace was justified in assuming control of the Market Street job and in excluding Mr. Tantillo from the Esplanade project. Appellant contends it has the "absolute right to cross-examine Mr. Tantillo on ultimate issues," (*i.e.*, his competence and credibility). In his testimony before the jury, Mr. Tantillo stated that he was particularly qualified for laying "big pipe" and doing the "nasty, deep construction," including the deep sewers and shoring. He also testified, "I am a very honest person." The Sabine pleadings contain multiple allegations that Lovelace wrongfully excluded Sabine from the joint venture projects thus depriving Sabine of the reasonable profits that would have been realized if a prudent contractor (such as Sabine) had been permitted to control the work. Appellant contends that by depriving him of its right to question Tantillo on the Austin project he was denied the opportunity to impeach Tantillo's assertions of his own honesty and expertise and to develop its claim that Sabine failed to bring into the contract the promised consideration. We disagree.

■ An ultimate issue is one that is essential to a right of action; it is one that the trial court must submit to the jury. *Bounds v. Caudle*, 611 S.W.2d 685, 687 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). The credibility of Mr. Tantillo was not an issue that was or should have been submitted to the jury. It was not an

ultimate issue. Lost profits and breach of contract by Sabine were, of course, ultimate issues. However, the test for determining the admissibility of evidence is not merely its relationship to an ultimate issue.

 The evidence appellant sought to develop on the Austin project was not admissible. The goal of appellant was, in effect, to show by a subsequent act that at the time of the joint venture projects, Mr. Tantillo had a character for negligence. Evidence of a person's character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion. Tex.R.Evid. 404(a). Evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Tex.R.Evid. 404(b). As for the honesty or credibility of Mr. Tantillo as a witness, specific instances of the conduct of a witness, for the purpose of attacking his credibility, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence. Tex.R.Evid. 608(b). Additionally, as discussed earlier in this opinion with respect to discovery of the information, the probative value of the evidence would have been substantially outweighed by the danger of unfair prejudice and the probability of confusing the issues. Tex.R.Evid. 403. Appellant's third and fourth points of error are overruled.

Points of error five, six and seven relate to the jury findings of liability and damages. In special issues two through seven the jury was asked to find that Lovelace breached each of the joint venture agreements, breached its fiduciary duty owed to Sabine under each agreement, and committed fraud in connection with each agreement. In response to each of these issues the jury answered, "We do." The eighth and ninth special issues required the jury to find damages and the jury responded in the following manner:

> If you have answered Special Issues No. 2, 3, 4, 5, 6, and/or 7 "We do," then answer:

### SPECIAL ISSUE NO. 8

What sum of money, if any, if now paid in cash, do you find from a preponder-ance of the evidence would fairly and reasonably compensate Sabine Consolidated, Inc., for the monetary losses, if any, which were proximately caused by the conduct of Lovelace Construction Company you have found above, if any? Answer in dollars and cents, if any, as to each of the following:

| | |
|---|---|
| Profit, if any, on the Market Street project: | $331,212.50 |
| Profit, if any, on the Esplanade project: | $141,842.00 |
| Lost profits, if any, on the New Caney project: | $375,000.00 |

. . . .

### INSTRUCTION

. . . .

If you should find ... actual damages under one or more of the foregoing theories, and should further find that [Lovelace] acted willfully in causing actual injury or damages to [Sabine], you may ... award such damages ... as you shall agree to be proper as punitive or exemplary damages, in addition to any award of actual damages.

### SPECIAL ISSUE NO. 9

What sum of money, if any, do you find from a preponderance of the evidence should be awarded to Sabine Consolidated, Inc., as punitive damages from Lovelace Construction Company? Answer in dollars and cents, if any.

| | |
|---|---|
| Answer: | $400,000.00 |

Lovelace argues in his fifth point of error that the judgment should have been reformed to eliminate the award of punitive damages because there were no independent findings of damage in tort and, without identifiable damages for a tort, no punitive damages can be awarded. Sabine responds that in answering the punitive damage issue, the jury was required to have found damages for *all* the conduct of Lovelace, not just a part of the conduct, and

further asserts that if the issues are defective in any way, appellant has waived its right to complain as he did not object to the submission of those issues at the time of trial. We find no merit in the contentions of Sabine.

 Punitive damages are not recoverable for breach of contract. *International Bank, N.A. v. Morales*, 736 S.W.2d 622 (1987); *Texas National Bank v. Karnes*, 717 S.W.2d 901, 901 (Tex.1986). A prerequisite to recovery of punitive damages is the award of damages in tort. *Bellefonte Underwriters Insurance Co. v. Brown*, 704 S.W.2d 742, 745 (Tex.1986). The joinder of claims in tort and in contract does not alter these basic principles. *Id.* at 745. From a reading of the issues and instruction above it is clear that the jury was not instructed to make the award of punitive damages contingent upon a finding of wrongful conduct under *all* the theories of special issues two through seven; it was only conditioned upon a finding of "one or more of the foregoing theories." The damages might very well have been awarded solely for the breach of the joint venture agreements. Furthermore, since we cannot determine from these special issues the dollar amount, if any, that was awarded for the torts of fraud and breach of fiduciary duty, we cannot determine whether the punitive damages are reasonable in relation to the actual damages in tort. It is the established law of Texas that the amount of exemplary damages should be reasonably proportioned to the actual damages found. *Alamo National Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981); *Southwestern Investment Co. v. Neeley*, 452 S.W.2d 705, 707 (Tex.1970).

 As for the contention of Sabine that Lovelace waived complaint by failing to object at trial to the submission of the form of the damage issues, Sabine mistakes where the duty to submit separate jury findings on damages lies. An appellant cannot be held accountable for the failure of an appellee to secure separate jury findings upon which an accurate judgment could be based. *Lucas v. Nesbitt*,

653 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). Nor can an appellate court imply a finding of actual damages in tort, because a court of appeals cannot make original findings of fact; it can only "unfind" facts. *Texas National Bank v. Karnes*, 717 S.W.2d at 902. For the foregoing reasons, we hold that the trial court erred in awarding punitive damages where there was no independent finding of actual damages in tort. We sustain appellant's fifth point of error.

By the sixth and seventh points of error, appellant asserts that there was no evidence, or, alternatively, insufficient evidence to support the jury's award of $375,-000 as profits lost on the New Caney project. We agree.

The only evidence regarding these lost profits was offered by Mr. Tantillo. He testified that in the summer of 1984 Sabine's bonding company reduced its bonding capacity below $5,000,000. There was a job in New Caney on which the bonding company would not give Sabine the limit needed to bid. Mr. Tantillo testified, "We had prepared a bid of about 4.8 million dollars; 4.8 or 4.9, as I don't remember the exact number, but we would have been low bidder on it. . . . The low bidder was right at five million dollars." In response to a question as to lost profits on the New Caney project, Mr. Tantillo responded, "I feel like we would have made somewhere between $400,000 and $500,000 net after overhead and everything." Neither party presented any further proof at trial.

 In order to recover lost profits, the Texas courts require that the amount of the loss be shown by competent evidence with reasonable certainty. *Southwest Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1099 (1938); *Allied Bank West Loop, N.A. v. C.B.D. Associates, Inc.*, 728 S.W.2d 49 (Tex.App.—Houston [1st Dist.] 1987, writ requested); *Keller v. Davis*, 694 S.W.2d 355, 356–57 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). Uncertainty as to the fact of damages will defeat recovery. *Owen*, 115 S.W.2d at 1099. In deciding a "no evidence point," an appellate court will review only that evi-

dence which supports the verdict or judgment. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex.1986). When the evidence offered to prove a vital fact is so weak as to do no more than to create a mere surmise or suspicion of its existence, the evidence is, in legal effect, no evidence. *Joske v. Irvine,* 91 Tex. 574, 44 S.W. 1059, 1063 (1898); *Southwestern Bell Telephone Co. v. McKinney,* 699 S.W.2d 629, 632 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).

■ The evidence of lost profits on the New Caney project is miniscule, consisting of speculation stacked upon speculation. Contracts are not always awarded to the lowest bidder. For example, those City of Houston contracts before this court specifically recite that the successful contractor was the lowest *responsible* bidder, the implication being that other lower bids might have been received. There is no evidence that the bid that Sabine alleges it would have submitted would have been within the specifications or that Sabine would have been available to do the job. Mr. Tantillo's bare assertion as to profits was totally unsupported by objective data. In summary, there is a complete absence from the record of objective facts, figures, and data without which it cannot be ascertained with the required degree of certainty that the New Caney job would have been awarded to Sabine and would have been profitable. We hold that the evidence offered to prove lost profits on the New Caney project is less than a scintilla and will not support the judgment of the trial court. Appellant's sixth point of error is sustained. By sustaining the "no evidence point," it becomes unnecessary to address appellant's alternative point of error seven, contending that there was insufficient evidence to support the finding of lost profits.

In its eighth point of error appellant attacks the jury findings of profit on both the joint venture projects, arguing that the findings of a court ordered audit constitute conclusive proof that there was a net loss on the two projects. By agreed order of the parties, the court appointed the accounting firm of Deloitte, Haskins and Sells (DH & S) to perform a standard audit

of income received and expenses incurred on the joint venture construction projects. DH & S complied with the order and filed a report reflecting that there was a $161,105 profit on the Market Street job and a $390,289 loss on the Esplanade project, creating a net loss for the joint ventures. Rule 172 of the Texas Rules of Civil Procedure provides:

> The auditor shall verify his report by his affidavit stating that he has carefully examined the state of the account between the parties, and that his report contains a true statement thereof, so far as the same has come within his knowledge. Said report shall be admitted in evidence, but may be contradicted by evidence from either party where exceptions to such report or of any item thereof have been filed before the trial.

Tex.R.Civ.P. 172.

■ The audit report before this court contains no such affidavit as is required by Rule 172. It fails to meet the standards of a Rule 172 audit. Further, six days before trial Sabine filed an objection to the audit. Therefore, the trial court did not err in admitting evidence that contradicted and supplemented the auditor's report. At trial, a DH & S partner testified that adjustments might be necessary in several areas, including equipment rental, subcontracting to a related party, superintendent's charges, payroll charges and clerical expenses. DH & S made no determination as to whether these charges were properly authorized or whether any of the charges were actually incurred by the joint venture jobs. The DH & S partner admitted that were the jury to conclude that certain charges were unauthorized or were incurred for projects other than those of the joint ventures, then the profits would increase. The jury did so conclude and rendered their verdict accordingly. We hold that the verdict and judgment were supported by admissible evidence. Appellant's eighth point of error is overruled.

Appellant asserts in its ninth point of error that the trial court erred in overruling its application for stay of enforcement of judgment or reduction of the supersede-

as bond. Appellant contends that the Texas rule of procedure requiring that he post a supersedeas bond equal to the amount of judgment, interest, and costs, is unconstitutional as applied because enforcement of the rule denied Lovelace its right to appeal. Tex.R.App.P. 47.[1] Appellant argues that Article I, Sections 13 and 19, of the Texas Constitution guarantees Lovelace a right to review of the district court decision and due process of law. Lovelace was unable to post the supersedeas bond and, therefore, could not prevent Sabine from executing the judgment on its property.

The Texas rules of procedure provide a method for appellants to suspend the execution of judgment by filing a "good and sufficient bond" or by making a cash deposit. Tex.R.App.P. 47(a). The amount of the bond shall be at least the amount of the judgment, interest, and costs. Tex.R. App.P. 47(b). Although the trial court has discretion to set a greater amount, in the case before us, the bond was set at the minimum allowed by the rule. The intent of the rule is to enable the appellee to collect the judgment against the appellant and his sureties if the judgment is affirmed. *Mudd v. Mudd,* 665 S.W.2d 128, 130 (Tex.App.—San Antonio 1983, no writ).

The thrust of appellant's argument seems to be that he is constitutionally guaranteed the right to exhaust all appeals before the appellee can exercise any control over the appellant's property. We disagree. The Constitutional provision cited by the appellant has been held by the Supreme Court of Texas to guarantee all litigants the right to redress their grievances, or in the vernacular: "the right to their day in court." *LeCroy v. Hanlon,* 713 S.W.2d 335, 341 (Tex.1986). It is aptly called the "open courts provision" and establishes:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

Tex.Const. art. I, § 13.

 No excessive bail, fine or punishment has been imposed upon the appellant; only the minimum bond has been required. Appellant has had his day in court. By due process of law an amount has been adjudged to be owed to Sabine. It does not violate the Constitution of this State for our courts to protect that judgment. It is, in fact, consistent with our Constitution that the successful litigant's right to property should be afforded due protection by the courts that determined that property right. We, therefore, hold that Rule 47 of the Texas Rules of Appellate Procedure is not unconstitutional as applied. The trial court did not err in refusing to reduce the supersedeas bond or to stay execution. Appellant's ninth point of error is overruled.

The judgment of the trial court is affirmed as modified.

---

1. At the time Lovelace filed its brief the applicable provision was Tex.R.Civ.P. 364. (Vernon 1985).