Colette **BOHATCH**, Appellant,

v.

**BUTLER & BINION; Butler & Binion, L.L.P.; Michael W. Hilliard; Elizabeth M. Thompson; Ron Brown; Louis B. Paine, Jr.; Robert Hayden Burns; Marlon E. McDaniel; Everett A. Marley, Jr., P.C.; Joseph H. Peck, Jr., P.C.; Robert B. Reynolds, P.C.; Dan C. Cain, P.C.; Jack Lapin; Jack Lapin, P.C.; and John McDonald, Appellees.**

No. 14–93–00903–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 1995.

Rehearing Overruled Aug. 31, 1995.

---

Eliot P. Tucker, H. Victor Thomas, Houston, for appellant.

Larry D. Knippa, Richard N. Countiss, David W. Holman, Houston, for appellees.

Before MURPHY, C.J., and YATES and FOWLER, JJ.

**OPINION**

YATES, Justice.

All parties appeal a jury verdict in favor of Colette Bohatch and against the law firm of Butler & Binion and individual members of its management committee for breach of a partnership agreement and breach of a fiduciary duty.[1] The jury awarded Bohatch $307,000.00 in actual damages against all defendants and also awarded $4 million in puni-

tive damages against partners Louis B. Paine, Jr., R. Hayden Burns, and John K. McDonald, individually.[2] The final judgment reduced the punitive damages against the three partners to $237,141.00. In eleven points of error, Bohatch complains of certain trial court rulings. In twelve cross-points, Butler & Binion assails all of the jury's adverse findings. In a separate, limited appeal, Paine, Burns, and McDonald, raise four points of error complaining about punitive damages. *See* TEX.R.APP.P. 40(a)(4). Because we find the firm breached the partnership agreement but did not breach a fiduciary duty, we modify the trial court's judgment and affirm as modified.

**FACTS**

**A. The Expulsion**

1/86   Colette Bohatch joins the Washington D.C. office of Butler & Binion as an associate. John McDonald is the managing partner of the office and McDonald's client, Pennzoil, is virtually the office's only client.

2/90   Bohatch becomes a partner and starts receiving internal operating reports of the number of hours each attorney worked, billed, and collected. Based on those reports, she becomes concerned that the amount of work McDonald performs for Pennzoil does not match the hours he reports.

3/90   Bohatch discusses her concerns with the office's other partner, Richard Powers. He and Bohatch find McDonald's "daily diary," a record of his work time, and make copies of the entries for the previous two months. The diary entries increase Bohatch's suspicion.

7/13/90   Bohatch complains to McDonald that she is not receiving her mail and McDonald gives a "flippant" response. Bohatch decides to report her concerns about overbilling to Paine, the firm's managing partner in Houston.

1. Sixty-seven other partners were served with citation and a copy of the petition; however, these partners were not named as parties to this suit.

2. Unless otherwise indicated, we will refer to Butler & Binion as "the firm" and to all other parties and/or persons by last name.

7/15/90  While attending the firm's summer party in Houston, Bohatch tells Paine that McDonald is overbilling Pennzoil. Paine says he will investigate. Later that day, Bohatch tells Powers that she told Paine about the overbilling.

7/16/90  Back in the Washington office, Powers talks privately with McDonald. After their discussion, McDonald tells Bohatch for the first time that Pennzoil is not satisfied with her work and wants her work supervised. Subsequently, McDonald takes away all Pennzoil work from Bohatch.

7/17/90  Bohatch repeats her allegation over the phone to Paine and two other members of the firm's management committee, Burns and Marion E. McDaniel. Paine, Burns, and McDaniel then call McDonald, who tells them that Pennzoil has problems with Bohatch's work and that he told Bohatch of the dissatisfaction.

7/90–8/90  Paine and Burns conduct an investigation. After reviewing the Pennzoil bills and the computer print-outs for those bills, Paine and Burns conclude the bills are in order. They also talk to Pennzoil's in-house counsel, John Chapman, who is the firm's primary contact with Pennzoil. Chapman confirms that Pennzoil has problems with Bohatch's work and also says that Pennzoil is satisfied with the firm's bills.

Pennzoil's legal department also conducts its own review of the bills and concludes the bills are reasonable.

8/23/90  Paine meets with Bohatch in Washington and tells her that the firm conducted an investigation in which it found no basis for her allegations. Believing that Bohatch did not want to work with McDonald or for a client that wanted her work supervised, Paine tells Bohatch that it is "in her best interest" to look for other employment. Paine also tells Bohatch that the firm will support this by (1) giving her a recommendation; (2) continuing her monthly draw, (3) allowing her to continue using her office, and (4) providing her with insurance coverage. Thereafter, the firm does not assign any projects to Bohatch.

9/17/90  Bohatch hires an attorney.

1/91  The firm denies her a year-end distribution for 1990 and reduces her tentative distribution share for 1991 to zero.

6/3/91  After providing one month notice of its intent to terminate her monthly draw, the firm pays Bohatch her last monthly draw.

8/6/91  The firm gives Bohatch notice that she needs to vacate her office by November 1, 1991.

9/4/91  Bohatch accepts employment as a "contract partner" with the law firm of Duncan & Allen.

10/18/91  Bohatch files this suit alleging breach of contract, breach of fiduciary duty, breach of a duty of good faith and fair dealing and wrongful discharge.

10/21/91  The firm formally expels Bohatch.

## B. Procedure at Trial

Before trial, the firm moved for summary judgment on all of Bohatch's tort causes of action. The trial court granted summary judgment on (1) wrongful discharge; (2) breach of fiduciary duty for acts occurring on or after October 21, 1991; and (3) breach of the duty of good faith and fair dealing for acts occurring on or after October 21, 1991. The trial court denied summary judgment on the breach of fiduciary duty and breach of the duty of good faith and fair dealing claims for acts that occurred before October 21, 1991. The case was tried to a jury solely on the breach of contract and breach of fiduciary duty claims. After a four-day trial beginning on March 15, 1993, the jury answered in favor of Bohatch on both causes of action. The jury awarded Bohatch actual damages of $57,000.00 for lost earnings in the past and $250,000.00 for mental anguish sustained in the past. The jury also found that Paine, Burns, and McDonald breached a fiduciary duty "with an intent to gain additional benefit" and awarded Bohatch $4 million in punitive damages, which were assessed evenly among the three partners. The jury also awarded $175,000.00 in trial attorney's fees and $71,000.00 in conditional appellate attorney's fees.

After considering the parties' post-verdict motions, the trial court entered judgment. Ruling that Bohatch could only recover in tort, the court deleted the award of attorney's fees, but awarded Bohatch the actual damages found by the jury for lost earnings and mental anguish, plus pre- and post-judgment interest against all named defendants. In addition, the court awarded Bohatch the exemplary damages found by the jury against Paine, Burns, and McDonald.

However, in a letter to counsel explaining his rulings, the trial judge expressed concern about the amount of the punitive damages awarded and requested additional briefing on a remittitur. The parties complied and on August 30, 1993, the trial court suggested a remittitur of the punitive damages assessed against Paine, Burns, and McDonald. On September 24, 1993, Bohatch accepted the remittitur and the trial court entered a second judgment leaving the actual damages award intact, but reducing the punitive damages award against Paine, Burns, and McDonald from $4 million to $237,141.00. On December 21, 1993, after denying additional post-judgment motions, the trial court entered a third judgment identical to the second judgment, except that it specifies the period for accrual of pre-judgment interest. Each judgment entered by the court incorporated all of the jury's findings.

All parties perfected an appeal. Because the firm challenges all the jury's findings, we will address their contentions first.

## BREACH OF FIDUCIARY DUTY

### A. The Duty

The firm contends there is no evidence or insufficient evidence to support the jury's finding of breach of fiduciary duty. In particular, the firm contends that, as a matter of law, Bohatch is not entitled to recover for breach of fiduciary duty because their duty to her is a very limited one and Bohatch did not allege or prove conduct amounting to a breach of that limited duty.

■ Question 2A asked: "Was there a breach of fiduciary duty owed by Defendants to Colette Bohatch that proximately caused damages to Colette Bohatch?" "Breach of fiduciary duty" was defined as follows:

"Breach of fiduciary duty" means a failure to act fairly, honestly, in the utmost good faith, with undivided loyalty, or with full disclosure of all material information. Termination of a partner in accordance with the Partnership Agreement does not constitute a breach of fiduciary duty.

The jury answered this question in the affirmative.[3]

Question 5 (concerning punitive damages) asked the jury whether Paine, Burns, and McDonald "acted with an intent to gain an additional benefit for [themselves]." The jury also answered "yes" to this question. The firm, as well as the three partners, Paine, Burns, and McDonald, challenge the sufficiency of the evidence to support the jury's affirmative answers to these two questions.[4]

The firm contends that Bohatch did not allege conduct that constitutes a breach of fiduciary duty under the Texas common law or under the Texas Uniform Partnership Act (the Act), TEX.REV.CIV.STAT.ANN. art. 6132b

3. Bohatch contends the firm's assertion of a limited fiduciary duty was waived because it did not object to the submission of question 2A or request a limiting instruction. The firm had no obligation to object to any of the questions submitted unless it intended on appeal to challenge the submission of those questions. See TEX. R.CIV.P. 278. The firm has not challenged the submission of the breach of fiduciary question; instead, the firm has challenged the legal sufficiency of the evidence to support the finding of breach of fiduciary duty because on the facts of this case, the firm owed only a limited duty. Such a complaint may be made for the first time after the verdict. TEX.R.CIV.P. 279; Shell Oil Co.

v. Humphrey, 880 S.W.2d 170, 174 (Tex.App.— Houston [14th Dist.] 1994, writ denied). The firm preserved this complaint by raising it in its post-verdict motions. See id. (citing Steves Sash & Door Co. v. Ceco Corp., 751 S.W.2d 473, 477 (Tex.1988)).

4. Bohatch contends that the firm is vicariously liable for punitive damages based on the acts of its partners. As discussed below, we need not address the punitive damages issue. However, for purposes of our discussion on breach of fiduciary duty, we assume, without deciding, that the firm is liable for the acts of its partners.

(Vernon 1970).[5] Texas law undeniably recognizes that partners owe one another a fiduciary duty. *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 264–65 (1951); *Johnson v. Peckham*, 132 Tex. 148, 120 S.W.2d 786, 787–88 (1938); *Kunz v. Huddleston*, 546 S.W.2d 685, 688 (Tex.App.—El Paso 1977, writ ref'd n.r.e.).

Under either the Act or the common law, partners owe these fiduciary duties to each other: (1) full disclosure of all matters affecting the partnership; (2) accounting for all partnership profits and property, i.e., refraining from self-dealing; and (3) refraining from competition with the partnership. TEX.ANN. CIV.STAT. art. 6132b §§ 20, 21, 22.[6] Neither the Act nor Texas case law addresses what fiduciary duty, if any, partners owe to another partner who is being expelled from the partnership.[7]

Fortunately, courts in other jurisdiction have addressed this issue. Those courts have found that expulsion of a partner from a partnership cannot be in bad faith even where the partnership agreement allows for expulsion without cause and even, at times, without notice. *Day v. Sidley & Austin*, 394 F.Supp. 986, 992–94 (D.C.Cir.1975); *Lawlis v. Kightlinger & Gray*, 562 N.E.2d 435, 440–43 (Ind.App.1990); *Leigh v. Crescent Square, Ltd.*, 80 Ohio App.3d 231, 608 N.E.2d 1166, 1169–71 (1992); *Waite v. Sylvester*, 131 N.H. 663, 560 A.2d 619, 622–23 (1989); *Levy v. Nassau Queens Medical Group*, 102 A.D.2d 845, 476 N.Y.S.2d 613, 614 (1984); *Gelder Medical Group v. Webber*, 41 N.Y.2d 680, 394 N.Y.S.2d 867, 363 N.E.2d 573, 577 (1977); *Holman v. Coie*, 11 Wash.App. 195, 522 P.2d 515, 523–24, *review denied*, 84 Wash.2d 1011 (1974), *cert. denied*, 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975). These courts hold that partners have a general fiduciary duty not to expel other partners from the partnership in bad faith. *Id.* "Bad faith" in this context means only that partners cannot expel another partner for self-gain. *Id.* We agree with the reasoning of these cases and adopt their definition.

The firm's partnership agreement provides for expulsion of a partner upon the recommendation of the management committee and the vote of the partners.[8] It does not

---

**5.** Although the Act has been amended, the parties do not dispute that this case is governed by the prior Act. *See* Act of January 1, 1994, 73rd Leg., R.S., ch. 917, 1993 Tex.Gen.Laws 3887, 3912.

**6.** *See, e.g., Fitz–Gerald*, 237 S.W.2d at 257–58 (constructive trust imposed on joint venturer who took lease in his own name in violation of joint venture agreement); *Peckham*, 120 S.W.2d at 787 (partner who purchased partner's one-half interest in oil and gas leases breached fiduciary duty by failing to disclose ongoing negotiations with third party which resulted in substantial profit to breaching partner); *Rodgers v. RAB Investments, Ltd.*, 816 S.W.2d 543, 546–47 (Tex. App.—Dallas 1991, no writ) (partners breached fiduciary duty by secretly paying themselves commission from partnership funds in violation of agreement not to withdraw such funds without consent of all the partners or court order); *Cheek v. Humphreys*, 800 S.W.2d 596, 597–97 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (partner breached fiduciary duty by secretly appropriating partnership assets for his own profit); *Lovelace v. Sabine Consolidated, Inc.*, 733 S.W.2d 648, 651 (Tex.App.—Houston [14th Dist.] 1987, writ denied) (joint venturer breached fiduciary duty by diverting funds from joint venture project into his personal account); *Veale v. Rose*, 657 S.W.2d 834 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.) (partner at accounting firm breached fiduciary duty by providing accounting services in competition with firm and by appro-

priating firm resources for his personal use); *Woodruff v. Bryant*, 558 S.W.2d 535 (Tex.App.—Corpus Christi 1977, writ ref'd n.r.e.) (case remanded to determine whether partner breached fiduciary duty by managing competing loan business). As some of these cases reflect, a cause of action for breach of fiduciary duty exists at common law. It is not limited, as the firm suggests, merely to an accounting based on a claim for wrongful exclusion from partnership business under section 22 of the Act.

**7.** The only reference in the Act to "expulsion" relates to dissolution of the partnership. Partners have the power to dissolve the partnership at any time. *Rodgers*, 816 S.W.2d at 548. The rights of partners upon dissolution of the partnership depends on whether the dissolution is caused by a violation of the partnership agreement. TEX.ANN.CIV.STAT. art. 6132b, part VI. A dissolution caused by expulsion of a partner that is not bona fide in accordance with the agreement may give rise to damages for breach of the agreement. *Id.* at §§ 31(1)(d), 38(2)(a)(II). This case does not deal with dissolution because section 3.3 of the partnership agreement in this case expressly provides that "expulsion of a partner shall not cause dissolution."

**8.** Bohatch sought and obtained a jury finding that she and "the defendants" agreed to become partners pursuant to the revised partnership

require any showing of cause for expulsion of a partner. Section 6.1(g) of the agreement gives the management committee the authority to recommend expulsion of a partner who in the committee's opinion, should be expelled pursuant to section 3.3. That section provides that expulsion must be by affirmative vote of the partners at a meeting called by the managing partner "upon not less than three days notice."

In its pre-trial order granting partial summary judgment, the trial court ruled that the firm's actual expulsion of Bohatch on October 21, 1991, complied with these provisions and did not constitute a breach of fiduciary duty or breach of a duty of good faith. The court so instructed the jury in the last sentence of the instruction under question 2A. The issue of "utmost good faith" with respect to the firm's conduct leading up to Bohatch's expulsion, however, was submitted to the jury as part of a broad definition of breach of fiduciary duty contained in question 2A. "Good faith" was not defined in that instruction. We have stated, however, that within the context of an expulsion, partners must not act in bad faith, i.e., for self gain. *See id.*

Taken together, question 2A on breach of fiduciary duty (whether the defendants failed to act "in the utmost good faith") and question 5 on punitive damages (whether Paine, Burns, and McDonald "acted with an intent to gain an additional benefit for [themselves]") address the issue of whether the firm, acting through it partners, expelled Bohatch in bad faith (for self gain). Although the jury answered these questions in Bohatch's favor, we find that the answers are not supported by the evidence.

## B. The Standard of Review

█ The standard of review for the legal and factual sufficiency of the evidence is well-established. When both legal and factual sufficiency points are raised, we must first review the legal sufficiency to determine if there is any evidence of probative value to support the jury's findings. *Glover v. Tex. Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex. 1981); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (Tex.1951). That review re-

quires us to consider only the evidence and inferences that tend to support the jury's findings and to disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988). If there is more than a scintilla of evidence to support the jury's findings, we may not overturn the judgment on legal sufficiency grounds. *Id.*

If the findings are supported by legally sufficient evidence, we must then review the factual sufficiency of the evidence by weighing and considering the evidence both in favor of, and contrary to, the challenged findings. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). We must uphold the jury's findings unless they are so against the great weight and preponderance of the evidence as to be manifestly unjust or erroneous. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986).

The issue is not whether the firm or the three partners in fact gained an additional benefit by expelling Bohatch from the firm, but whether they *intended* to gain an additional benefit by doing so. *See Russell v. Truitt*, 554 S.W.2d 948, 955 (Tex.App.—Fort Worth 1977, writ ref'd n.r.e.).

Bohatch contends that the partners ousted her from the firm so they could retain Pennzoil as a profitable client, avoid a refund of overbilled fees, and acquire her share of the partnership. Bohatch also contends that McDonald wanted her expelled so he could receive a firm distribution based on hours he did not work.

The evidence does not confirm these allegations. The only evidence in the record about the firm's possible loss of Pennzoil as a client was Paine's testimony that he feared losing Pennzoil and having to refund fees when he first heard about the overbilling allegations. These allegations, nonetheless, were reported to Pennzoil. The evidence shows that Pennzoil trusted McDonald to handle its legal matters, that it was satisfied with the bills after conducting its own review, that it never considered taking its business

agreement of August 1, 1990. The firm does not    contest that finding.

elsewhere, and that it never demanded a refund of any fees paid.

Bohatch also argues that she was expelled so that the other partners could acquire her partnership interest. Bohatch's partnership share was so small, however, that the jury could not have reasonably concluded that the partners' expulsion of Bohatch was *motivated* by their desire to acquire her partnership share.

Finally, Bohatch argues she was expelled based on the firm's "sham" investigation. According to Bohatch, McDonald misrepresented to the firm that Pennzoil was dissatisfied with her work and conspired with Pennzoil to have her expelled from the firm. Bohatch asserts the firm's investigation was tainted by what it was told by McDonald and Pennzoil. Although Bohatch offered evidence suggesting that her work was satisfactory, there is no evidence that McDonald engaged in an alleged conspiracy to expel Bohatch. Even if there was evidence to support Bohatch's allegation of a conspiracy, there is no evidence that the firm was a participant. It would have been pure speculation for the jury to conclude the investigation was a "sham" simply because the firm relied on the two principals that were the focus of Bohatch's overbilling allegations. Furthermore, even if the firm mistakenly relied on McDonald and Pennzoil, McDonald and Pennzoil did not have the authority to expel Bohatch nor could their intent be imputed to the firm.

Finally, any benefit that McDonald may have intended to gain was from overbilling. Overbilling, if any, was a breach of fiduciary duty only as to Pennzoil, not as to Bohatch.

Under the partnership agreement, the firm could have immediately expelled Bohatch in July 1990, without stating a reason or conducting an investigation. Instead, the firm investigated the matter. That the investigation may have been inadequate or unfair is not evidence of self-gain.

The firm also could have expelled Bohatch in August 1990, when, after conducting its investigation and finding no evidence to substantiate Bohatch's allegations, Paine believed that Bohatch could no longer work for McDonald or for a client that wanted her work supervised. Instead, the partners on the management committee chose the "step down" severance rather than the "guillotine" severance permitted by the partnership agreement. *See, e.g., Lawlis,* 562 N.E.2d at 443. They allowed Bohatch to continue as a partner, paying her a monthly draw, allowing her to use firm resources, and providing her with insurance coverage until she found other employment. Such conduct does not demonstrate a purpose of self gain. The record suggests that the committee members acted with the belief they had the legal right under the partnership agreement to resolve what they perceived, rightly or wrongly, as a "fundamental schism," among the partners in the Washington office. *See, e.g., Leigh,* 608 N.E.2d at 1169–71; *Lawlis,* 562 N.E.2d at 443; *Waite,* 560 A.2d at 622–23.

Accordingly, we find no evidence that partners at the firm expelled Bohatch in bad faith; that is, for self-gain. Therefore, we hold there is no evidence to support the jury's finding of a breach of fiduciary duty. We sustain the firm's first, second, and eighth cross-points as well as the partners' points of error one, two, and three attacking the jury's answers to Questions 2A and 5.

## BREACH OF CONTRACT

In its third cross-point, the firm contends there is no evidence or insufficient evidence to support the jury's finding in question 1B that it breached the partnership agreement.

Bohatch's case is predicated on four acts: (1) the instruction to look for other employment; (2) the denial of her year-end distribution for 1990 and of her tentative distribution percentage for 1991; (3) the termination of her monthly draw; and (4) the request to vacate her office.

### A. Constructive Expulsion

■ Bohatch contends the firm breached the partnership agreement when it denied her a year-end distribution for 1990 and did not assign her a tentative distribution percentage for 1991. She also contends the firm breached the agreement by cutting off her monthly draw. Bohatch further contends that these acts constituted a constructive ex-

pulsion from the firm in violation of sections 6.1(g) and 3.3 of the agreement. Finally, Bohatch contends that Paine's suggestion on August 23, 1990, that she look for another job and the firm's request on August 6, 1991, that she vacate her office by November 1, 1991, also amounted to a constructive expulsion. The firm contends it did not breach the partnership agreement by these acts.

Initially, we address Bohatch's assertion that she was constructively expelled by the firm's request to vacate. That request did not require Bohatch to immediately vacate her office. Rather, it gave Bohatch three months notice. At the time of the request, Bohatch had been engaged in a year-long job search and had a job offer from Duncan & Allen.

Furthermore, while the firm may have been seeking to expedite Bohatch's departure, the evidence in the record suggests that both Paine and Burns considered Bohatch a partner of the firm until at least September 4, 1991, when Bohatch joined the firm of Duncan & Allen. More importantly, Bohatch considered herself a partner as late as August 1991, as reflected by the correspondence between her attorney and Paine. The intent of the parties is the prime element in determining whether a partnership exists. *Coastal Plains Dev. Corp. v. Micrea*, 572 S.W.2d 285, 287 (Tex.1978); *Ben Fitzgerald Realty Co. v. Muller*, 846 S.W.2d 110, 120 (Tex. App.—Tyler 1993, writ denied) (opinion on rehearing).

Finally, Bohatch secured a position at Duncan & Allen nearly a month before the November 1, 1991 deadline she was given to vacate her office. Thus, we find the firm's request that Bohatch vacate her office was not a constructive expulsion.

■ Bohatch also contends she was expelled from the firm without notice or by vote of the partners on August 23, 1990, when Paine advised her to look for another job. Although Bohatch was not given any work by the firm after the 23rd, the record plainly shows that Bohatch was still considered by the firm to be a partner until Sep-

tember 1991. Thus, Bohatch was not constructively expelled from the firm on August 23, 1990.

■ We also find that the denial of Bohatch's distributions did not constitute a constructive expulsion from the firm. Bohatch argues she was constructively expelled when her tentative distribution percentage for the next fiscal year was reduced to zero, thereby taking her partnership interest and right to vote. The record reflects that even though her tentative distribution was reduced to zero, Bohatch still retained her right to vote on certain matters "per capita" or "per person" rather than by percentage of interest.

In any event, section 6.1(a) of the agreement requires the firm's management committee at the end of the fiscal year to determine a year-end distribution share and a tentative distribution share for the next fiscal year of any partner, subject to approval by the other partners. Therefore, the firm, through its management committee, had the right under section 6.1(a), exclusive of the expulsion provisions, to set distributions in accordance with the section's procedure. In other words, an individual's partnership status did not guarantee that individual the right to a distribution. Because the expulsion and distribution provisions of the agreement are mutually exclusive, the firm could not have expelled Bohatch merely by denying her distributions.

Bohatch admitted furthermore that the firm followed procedure in denying her year-end distribution; thus, that act did not, as a matter of law, constitute a breach of the agreement. *See Dobbins v. Coruthers*, 864 S.W.2d 754, 756 (Tex.App.—Houston [1st Dist.] 1993, no writ).

■ Paragraph 10(c) of the Procedure For Determining Partner Compensation, however, provides:

*Upon written notice* from the management committee stating the reasons therefore, a partner's tentative distribution percentage can be reduced for good cause at any time. (emphasis added).[9]

---

9. The firm adopted the Procedure For Determining Partner Compensation as a Major Policy pursuant to section 6.1(g) and incorporated it as part of the partnership agreement.

Bohatch did not receive such notice. Bohatch offered undisputed testimony that she did not receive a copy of the tentative distribution schedule for 1991, which showed her share had been reduced to zero. While the firm generally had the right to reduce her tentative distribution for 1991, it could not do so without written notice to Bohatch.

Instead of immediately initiating the expulsion procedure as permitted by the partnership agreement, the firm accommodated Bohatch while she searched for other employment. Having chosen not to exercise its rights under the expulsion provisions of the partnership agreement, the firm was still bound by that agreement. Paragraph 11 of the Procedure For Determining Partnership compensation provides in part that each (non-retired) partner *shall* receive a monthly draw of $7,500.00. It is undisputed that the firm paid Bohatch her last monthly draw on June 3, 1991, and that Bohatch did not receive a monthly draw even though she was still a partner. Thus, the firm violated the agreement not only when it reduced her tentative distribution without notice, but also when it cut her monthly draw. Accordingly, we find there is sufficient evidence to support the jury's finding that the firm breached the partnership agreement. We overrule the firm's third cross-point.

## B. Lost Earnings

■ In its fourth and fifth cross-points, the firm contends there is no evidence or insufficient evidence to support the jury's finding of lost earnings. In question 3A, the jury found that Bohatch sustained lost earnings of $57,000.00 before October 21, 1991.

The evidence demonstrates that Bohatch, while working comparable hours, made $22,000.00 less than her partnership classmates in 1990. The evidence also shows that Bohatch made $35,000.00 less than her partnership classmates for the first ten months of 1991. The $35,000.00 is the difference between the $90,000.00 earned by Bohatch's classmates for the first ten months of 1991 and what Bohatch earned based on payments of her $7,500.00 monthly draw for the first six months of 1991, plus $10,000.00 she earned from Duncan & Allen before being expelled from the firm. The total difference in earnings between Bohatch and her partnership classmates for 1990 and 1991 is $57,000.00, the amount awarded by the jury for lost earnings. The question is whether the evidence supports Bohatch's recovery of the entire $57,000.00.

The firm contends that Bohatch cannot claim the $22,000.00 because of her admission that the year-end distributions were made in accordance with the partnership agreement. Thus, the firm contends that without a year-end distribution for 1990, and without a tentative distribution share for 1991, Bohatch was limited to $16,667.00 in damages for lost earnings, i.e., $7,500.00 for each full month she did not receive a monthly draw, plus $5,000.00 for the first 21 days of October 1991, less an offset for compensation received from her new firm while still a partner at the firm.

We agree that Bohatch cannot, as a matter of law, recover the $22,000.00 in lost earnings for 1990 because of her admission that the denial of her year-end distribution was in accordance with the partnership agreement. As we stated, however, the firm breached the partnership agreement by denying her tentative distribution for 1991 without notice and by denying her monthly draw for several months in 1991. Thus, Bohatch is entitled to the $35,000.00 in lost earnings for 1991. Accordingly, we sustain the firm's fourth and fifth cross-points of error as to Bohatch's recovery of the $22,000.00 in lost earnings for 1990.

## MENTAL ANGUISH

■ In its sixth cross-point, the firm contends there is no evidence or insufficient evidence to support the jury's finding of mental anguish. In question 3b, the jury awarded Bohatch $250,000.00 for mental anguish suffered in the past.

Because Bohatch's only sustainable cause of action is for breach of contract, Bohatch is not entitled to recover mental anguish damages. *See Dean v. Dean*, 821 F.2d 279, 281–

83 (5th Cir.1987). Thus, we sustain the firm's sixth cross-point.

## EXCLUSION OF EVIDENCE

In its eleventh cross-point, the firm contends the trial court erred in excluding evidence of the investigation conducted by the District of Columbia Bar Association (the D.C.Bar) concerning allegations of overbilling. At the close of evidence, counsel for the firm made the following offer:

That Defendants reported the matter to the District of Columbia Office of Bar Counsel and the Texas Grievance Committee, that the matter was investigated by the District of Columbia Office of Bar Counsel and that it would have been put in through McDonald and Paine.

■ The trial court refused the offer but allowed the firm to make a bill of exceptions. To obtain reversal of a judgment based upon error of the trial court in the admission or exclusion of evidence, a party must show that: (1) the trial court did in fact commit error; and (2) the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). The admission or exclusion of evidence is a matter within the discretion of the trial court. *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105, 108 (Tex.1985) (orig. proceeding); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied).

According to the firm, Bohatch attempted to create the inference before the jury that McDonald was an unethical partner who overbilled clients and who was being protected by the managing partners so that the firm could retain an important client. The firm contends that excluding evidence of the investigation was erroneous because it directly contradicted the inference sought to be created by Bohatch. It contends that evidence of the investigation shows that the managing partners, the very persons accused of wrongdoing, were the ones who reported Bohatch's charge to the Bar Counsel. More importantly, the firm asserts this evidence shows that the Bar Counsel found no evidence of wrongdoing.

■ To preserve error, a bill of exceptions must show the nature of the evidence specifically enough so that the reviewing court can determine its admissibility. *Powell v. Powell*, 554 S.W.2d 850, 854–55 (Tex. App.—Tyler 1977, writ ref'd n.r.e.). The firm's bill does not reveal what was reported to the bar, what issue was resolved, or what information, if any, the bar relied on in reaching its conclusion. Presumably, the Bar Counsel resolved the issue between the firm and the client, Pennzoil, not the issue between Bohatch and the firm.

■ The question of whether the firm violated the D.C. bar rules or breached a fiduciary duty to its client was not a controlling issue. The jury was not asked whether the firm violated the D.C. bar rules, but whether the firm and its partners breached a fiduciary duty to Bohatch. The jury could have found such a breach even if the firm did not violate the bar rules.

Bohatch claims only that the firm retaliated against her for reporting what she reasonably believed was a violation of the bar rules. Whether there was in fact a violation of those rules is irrelevant and inadmissible. *See* TEX.R.CIV.EVID. 401, 402. Furthermore, evidence of the results of the Bar Counsel's investigation offered through the testimony of McDonald and Paine would clearly be hearsay and inadmissible. *See* TEX.R.CIV. EVID. 801(d).

Where evidence contained in a bill of exceptions is admissible only in part but is not separately offered, it is not error for the trial court to exclude the entire offer. *See Texas Employers Ins. Ass'n v. Garza*, 557 S.W.2d 843, 847 (Tex.App.—Corpus Christi 1977, writ ref'd n.r.e.). We find the trial court did not abuse its discretion in excluding the firm's offer. *See Ginsberg*, 686 S.W.2d at 108. We overrule the firm's eleventh cross-point.

## ATTORNEY'S FEES

In her ninth point of error, Bohatch complains the trial court erred in failing to award her attorney's fees. In question 4, the jury awarded Bohatch $175,000.00 in attorney's fees "for preparation and trial." The jury also awarded conditional appellate attorney's fees as follows: (1) $50,000.00 for appeal to

the Court of Appeals; (2) $20,000.00 for making or responding to an application for writ of error to the Supreme Court of Texas; and (3) $1,000.00 if writ of error is granted. As we described, the trial judge required Bohatch to elect between contract and tort damages. Bohatch elected recovery in tort and therefore, the final judgment does not include an award of attorney's fees.

Having now determined that Bohatch's only recovery is for breach of contract, we hold that Bohatch is entitled to attorney's fees. At trial, Bohatch sought attorney's fees under section 38.001 of the Texas Civil Practices and Remedies Code, which permits recovery of attorney's fees "in addition to the amount of a valid claim ... if the claim is for an oral or written contract." TEX.CIV.PRAC. & REM.CODE ANN. § 38.001(8) (Vernon 1986).

■ A party must satisfy two requirements to obtain an award of attorney's fees. *Rodgers,* 816 S.W.2d at 551. First, a party must prevail on a cause of action for which attorney's fees are recoverable *Id.* Second, the party must recover damages, i.e., "there must be a recovery of money or at least something of value; otherwise, the attorney's fees cannot be described as an 'addition' to the claimant's relief." *Id.* Bohatch has satisfied both requirements.

■ In this case, the jury found that the "defendants" failed to comply with the August 1, 1993, partnership agreement and awarded damages, i.e., lost earnings, "that resulted from such conduct." Thus, we hold the trial court improperly denied Bohatch's attorney's fees. We sustain Bohatch's ninth point of error.

### OTHER ISSUES

Because we have held that Bohatch cannot recover in tort, we need not address the remaining cross-points raised by the firm and the three partners with respect to punitive damages. Likewise, we need not address Bohatch's points of error one through eight complaining about the remittitur and

the trial court's ruling to award punitive damages against only Paine, Burns, and McDonald. Finally, Bohatch asks this court to consider her tenth and eleventh points of error only in the event that we *remand* this case for a new trial.[10] Because we are not remanding for a new trial, it is, unnecessary to address Bohatch's tenth and eleventh points of error. *See Horrocks v. Texas Dept of Transp.,* 852 S.W.2d 498, 499 (Tex.1993) (citing TEX.R.APP.P. 81(c)).

### CONCLUSION

In conclusion, we reverse the trial court's judgment allowing recovery of mental anguish and punitive damages for breach of fiduciary duty and render judgment that Bohatch take nothing on that claim. We further render judgment the trial court should have rendered for breach of the partnership agreement. *See* TEX.R.APP.P. 81(c); *see also Boyce Iron Works v. Southwestern Bell Telephone Co.,* 747 S.W.2d 785, 787 (Tex.1988) (where party recovers under alternative theories and court of appeals reverses judgment on one theory, appellate court must consider alternative theory of recovery).

Accordingly, we render judgment in Bohatch's favor solely for breach of contract and order that she recover $35,000.00 in past lost earnings and $225,000.00 in attorney's fees for trial and appeal to this court, together with pre- and post-judgment interest as set forth in the trial court's judgment.

■

---

**10.** In her tenth point of error, Bohatch complains the trial court erred in excluding evidence of her lost earnings incurred after she was formally expelled from the firm. In her eleventh point of error, Bohatch complains the trial court erred in granting the firm's motion for summary judgment on her wrongful discharge claim.