**TEXAS DEPARTMENT OF
TRANSPORTATION,
Appellant,**

v.

**Ben B. SHAW and National Surety
Corporation, Appellees.**

No. 04–92–00263–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 30, 1992.

Rehearing Denied Feb. 2, 1993.

Mark Heidenheimer, Asst. Atty. Gen., Highway Div., Austin, for appellant.

S. Mark Murray, Murray & Curl, Inc., Gilbert L. Guthrie, Clemens & Spencer, Dayton G. Wiley, Dayton G. Wiley & Associates, San Antonio, for appellees.

Before CHAPA, BIERY, and GARCIA, JJ.

## OPINION

BIERY, Justice.

This is an appeal from a summary judgment. Appellant Texas Department of Transportation (hereinafter referred to as "the state") filed suit against appellees Ben B. Shaw (hereinafter referred to as "Shaw" or "Mr. Shaw") and National Surety Corporation (hereinafter referred to as "surety"), among others, to impose liability for the alleged failure to forward to the state certain motor vehicle registration fees.[1] Mr. Shaw and surety moved for summary judgment. The state responded to the motions for summary judgment, but did not file a counter motion for summary judgment. The trial court granted Shaw's and surety's summary judgment motions. The state appeals, raising three points of error. We reverse and remand.

Mr. Shaw was the Bexar County Tax Assessor–Collector from January 1, 1977, until December 31, 1984. During that period, he was insured by surety on a bond in the amount of $50,000. The bond, as required by state law, was made out to the Governor of Texas, and was payable in the event Mr. Shaw did not "faithfully perform all the duties of his office."

As part of his official duties, Shaw was charged with accepting applications from the public for motor vehicle license registrations and collecting the lawful fees therefor on behalf of the state. Prior to Shaw's term, Bexar County authorized Handy Andy, Inc., a supermarket corporation, as a substation to collect the motor vehicle registration fees. Under this arrangement, customers made their payments to Handy Andy, Inc. As Tax Collector, Mr. Shaw's office was responsible for collecting the funds from Handy Andy, Inc. and transmitting them to the state.

In September of 1981, Handy Andy, Inc. sold license tags and collected $509,094.62 in public funds. With these funds on hand, the corporation declared bankruptcy and the license fee receipts were included in the bankruptcy estate. The state sought recovery through the bankruptcy court, and a series of payments were made over a six year period. The bankruptcy proceeding was finally concluded in 1987; however, $327,115.71 remained due and unpaid. It is this sum that the state seeks to recover from Mr. Shaw and the surety on his bond.

It is well established that a defendant moving for a summary judgment assumes the burden of showing as a matter of law that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976). To meet its burden, the defendant/movant must establish, as a matter of law, that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *Id.* In other words, a defendant/movant is entitled to summary judgment only if the defendant conclusively establishes that "at least one element of plaintiff's cause of action does not exist." *Mayhew v. Town of Sunnyvale*, 774 S.W.2d 284, 287 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, —— U.S. ——, 111 S.Ct. 963, 112 L.Ed.2d 1049 (1991); *see also State v. Seventeen Thousand and No/100 Dollars U.S. Currency*, 809 S.W.2d 637, 639 (Tex.App.—Corpus Christi 1991, no writ). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Harris v. Varo, Inc.*, 814 S.W.2d 520, 522 (Tex.App.—Dallas 1991, no writ).

To establish that the plaintiff cannot prevail, the defendant/movant must either directly attack the plaintiff's cause of action or move for summary judgment on the basis of an affirmative defense. When directly attacking the plaintiff's cause of action, it is not necessary for the defendant/movant to disprove all elements of the plaintiff's case. *Compton v. Calabria*, 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ). Rather, if the defendant can disprove any one of the essential elements, then the court must render summary judgment for that defendant. *Id.*

---

1. All remaining parties have since been non-suited.

Conversely, when moving for summary judgment on the basis of an affirmative defense, the defendant/movant must expressly present and conclusively prove each essential element of the affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); *Deer Creek Ltd. v. North Am. Mortgage Co.,* 792 S.W.2d 198, 200 (Tex.App.—Dallas 1990, no writ). In sum, the defendant/movant may obtain summary judgment by (1) disproving at least one of the elements of each of the plaintiff's causes of action; *or* (2) conclusively proving all the elements of an affirmative defense. *See American Medical Electronics, Inc. v. Korn,* 819 S.W.2d 573, 576 (Tex. App.—Dallas 1991, writ denied); *International Union United Auto. Aerospace & Agric. Implement Workers Local 119 v. Johnson Controls, Inc.,* 813 S.W.2d 558, 563 (Tex.App.—Dallas 1991, writ denied); *Lesbrookton, Inc. v. Jackson,* 796 S.W.2d 276, 280 (Tex.App.—Amarillo 1990, writ denied). Essentially, the defendant/movant is required to meet the plaintiff's causes of action, as pled, and to demonstrate that the plaintiff cannot prevail. *See Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 795 (Tex.App.—Beaumont 1988, writ denied); *see also Rose v. Odiorne,* 795 S.W.2d 210, 213 (Tex.App.—Austin 1990, writ denied) (defendant not entitled to summary judgment unless he proves that "plaintiff could not succeed upon any theory pleaded").

**2.** Act of July 15, 1929, 41st Leg., 2d C.S., ch. 88, § 10, 1929 Tex.Gen.Laws 172, 178–79, *amended by* Act of May 31, 1957, 55th Leg., R.S., ch. 301, § 2(g), 1957 Tex.Gen.Laws 731, 734–35. For current statutory provisions see TEX.REV. STAT.ANN. art. 6675a–10 (Vernon Supp.1992).

**3.** During oral argument, appellees contended plaintiff's third amended petition and this affidavit should be disregarded because the state incorporated these by reference into its response to defendants' motions for summary judgment. The summary judgment response contained an affidavit wherein the attorney for the state averred the petition was true and correct. Although not artful, appellees cite no authority as to why this procedure is erroneous. Rather, they argue the state failed to produce sufficient evidence to controvert its motions for summary judgment because pleadings do not raise a fact issue. Under Texas law, the non-

■ In this case, among other things, the state's pleadings allege Mr. Shaw is liable on the bond and statutorily liable for the motor vehicle registration fees pursuant to TEX.REV.STAT.ANN. art. 6675a–10 (Vernon 1977).[2] To support its allegation, the state filed a supporting affidavit concerning the deficiency and alleging a statutory violation.[3] During the time period pertinent to this case, article 6675a–10 required each County Tax Collector to apportion the funds collected "on Monday of each week." *Id.* Specifically, by statute, Mr. Shaw was required to deposit certain portions of the monies collected in the accounts of Bexar County and, after making such deposits, to transmit the balance of these funds to the State Department of Highways and Public Transportation, Division of Motor Vehicles every Monday; or alternatively, to deposit the monies in a daily interest-bearing account of Bexar County each Monday, and thereafter to remit the same to plaintiff/state within thirty-four days. Article 6675a–10 stated, in relevant part:

### Apportionment of funds

On Monday of each week each County Tax Collector *shall* deposit in the County Depository of his County to the credit of the County Road and Bridge Fund an amount equal to one hundred percent (100%) of net collections made hereunder during the preceding week until the

movant is not required to produce opposing evidence to the movant's motion for summary judgment. *See State v. Seventeen Thousand and No/100 Dollars U.S. Currency,* 809 S.W.2d 637, 639 (Tex.App.—Corpus Christi 1991, no writ) (discussing distinction between plaintiff's failure to raise fact issue and defendant conclusively disproving plaintiff's claims). The burden of proof shifts to the non-movant only after the movant has "establish[ed] his entitlement to a summary judgment on the issues expressly presented to the trial court by conclusively proving all essential elements of his cause of action or defense as a matter of law." *Casso v. Brand,* 776 S.W.2d 551, 678 (Tex.1989). In this case, the state, as nonmovant, is required to show opposing evidence to defendants/movants' motions for summary judgment only if Mr. Shaw and surety present competent extrinsic evidence establishing their entitlement to summary judgment.

amount so deposited for the current calendar year *shall* have reached a total sum of Fifty Thousand Dollars ($50,000).

Thereafter, and until the amount so deposited for the year *shall* have reached a total of One Hundred and Seventy-five Thousand Dollars ($175,000) he *shall* deposit to the credit of said Fund on Monday of each week an amount equal to fifty per cent (50%) of collections made hereunder during the preceding week.

Thereafter, he *shall* make no further deposits to the credit of said fund during that calendar year. All collections made during any week under the provisions of this Act in excess of the amounts required to be deposited to the credit of the Road and Bridge Fund of his County *shall* be remitted by each County Tax Collector on *each Monday* of the succeeding week to the State Highway Department together with carbon copies of each license receipt issued hereunder during the preceding week. He *shall* also on *Monday of each week* remit to the Department, as not provided by law, all transfer fees and chauffeurs' license fees collected by him during the preceding week, together with carbon copies of all receipts issued for said fees during the week.

Act of July 15, 1929, 41st Leg., 2d C.S., ch 88, § 10, 1929 Tex.Gen.Laws 172, 178–79, *amended by* Act of May 31, 1957, 55th Leg., R.S., ch. 301, § 2(g), 1957 Tex.Gen. Laws 731, 734–35 (emphasis added). Clearly, the purpose of the statute is to provide a cash flow to the state and to avoid the accumulation of large sums of money which could become unavailable because of litigation such as occurred here.

The state claimed Shaw was liable for the loss because he failed in his statutory duty to remit and apportion the funds as required by law, and this failure caused $509,094.62 in public funds to be swept into the Handy Andy, Inc. bankruptcy estate. It also contended surety was liable under the terms of its bond because, in failing to comport with article 6675a–10, Shaw did not "well and faithfully perform all the duties of his office." [4]

Mr. Shaw and his surety moved for summary judgment by directly attacking state's cause of action and by raising several affirmative defenses. In a direct attack against the state's article 6675a–10 argument, Mr. Shaw sought summary judgment on the ground that Shaw had, in fact, performed his statutory duties. The summary judgment evidence, however, does not support this proposition. By affidavit, Mr. Shaw testified, in pertinent part:

> The real cause of any loss suffered by the [state] as to the funds made the basis of this suit, was the filing by Handy Andy, Inc. for bankruptcy protection and the manner in which the United States Bankruptcy Court disposed of the money in the possession of Handy Andy, at the time of the automatic stay order which prevented Handy Andy from paying the money in question over to anyone except the Bankruptcy Court.

> Handy Andy, Inc. accounted for all but one of the license plate stickers that it handled.

> After the bankruptcy filing by Handy Andy, Inc., the Bexar County Tax Assessor–Collector's office, at my direction, provided the [state] an honest, detailed written statement of the number of automobile registration stickers in Handy

---

**4.** The state also argued that Mr. Shaw "did not account for all money that came into his hands." In addition to this "faithful performance" duty, the surety is also liable in the event Shaw did not "honestly account" for funds. Because the state does not accuse Shaw of dishonesty, whether or not he accounted "for all money that came into his hands" is not relevant to this appeal.

Additionally, the state contends appellees are liable for interest under article 6675a–10a, which provides that interest shall accrue for the benefit of the state on "[a]ll funds required by this Act to be remitted to [the state], which are not so remitted within sixty days after being *collected.*" TEX.REV.STAT.ANN. art. 6675a–10a (Vernon 1977) (emphasis added). Under the plain language of the statute, interest does not accrue unless the county tax assessor/collector "collects" the fees obtained incident to the registration of automobiles. In this case, the record is clear Mr. Shaw never collected the funds which are the subject of this litigation from Handy Andy, Inc. Article 6675a–10a is, therefore, not applicable.

Andy, Inc.'s care, the number of registration stickers issued on a weekly basis, the amount of money it collected as registration fees for the issuance of such registration stickers on a weekly basis, and the total amount of money collected and number of registration stickers returned.

> I state that I did not violate the terms of my bond in that I did well and faithfully perform all the duties of my office ... and the only reasons the [state] did not receive all the money that Handy Andy collected for licenses was because the [state] was not able to convince the Bankruptcy Court that it was entitled to receive the money.

Notwithstanding the legal conclusion that the statutory duties were performed, this affidavit does not conclusively prove Shaw performed his duties pursuant to article 6675a–10. The affidavit does not expressly state the tax-assessor complied with the weekly remittance procedures of article 6675a–10. In fact, Shaw makes no reference to remittances made by his office prior to the bankruptcy, but only states that a post-bankruptcy report was prepared regarding Handy Andy, Inc.'s sales and accounting procedures. In the absence of competent summary judgment evidence demonstrating the state cannot prevail on its allegation, Mr. Shaw has not met his summary judgment burden of showing, as a matter of law, the state has no article 6675a–10 cause of action against him. Additionally, because a genuine issue of mate-rial fact exists as to whether Shaw complied with article 6675a–10, thereby establishing that he "faithfully performed the duties of his office" under the terms of the bond, surety has also failed to meet its summary judgment burden.[5]

■ Moreover, in its pleadings, the state made alternative allegations of negligent conduct which went to the reasonableness of Mr. Shaw's acts and omissions in failing to (1) deputize those Handy Andy, Inc. employees who supervised and conducted the distribution and collection activities; and (2) require of Handy Andy, Inc. a written contract and fidelity bond. Neither the motions for summary judgment, nor the affidavit filed by Mr. Shaw, address the state's allegations that Shaw was negligent in his supervision and control of Handy Andy, Inc. Rather, Shaw limited his affidavit testimony to averments regarding general intentional acts of dishonesty:

> I was guilty of no dishonesty in my actions as tax assessor-collector in dealing with the funds made the basis of this suit and I did not profit or receive any pecuniary gain or benefit from the funds made the basis of this suit. I never had any criminal or dishonest intent or motive in dealing with the funds made the basis of this suit.

While we agree the summary judgment proof conclusively shows no dishonesty on Shaw's part, there is no conclusive testimony negating one or more of the essential elements of the state's negligence cause of

---

**5.** For the first time on appeal, Shaw and his surety contend "the applicable statutes are not mandatory" and that violation of their terms does not create liability. The supreme court has repeatedly stated that appellate courts may not rule on the basis of unassigned error. *See Cox v. Johnson,* 638 S.W.2d 867, 868 (Tex.1982) (fundamental or unassigned error is a discredited doctrine which survives today only in rare instances); *American Gen. Fire & Casualty Co. v. Weinberg,* 639 S.W.2d 688, 689 (Tex.1982) (court of appeals erred when reversing the trial court's judgment on point neither party assigned). Under the Texas Rules of Appellate Procedure, an appellate court may grant relief only if the relief was first sought in the trial court. TEX. R.APP.P. 52(a). Here, neither Mr. Shaw nor surety moved for summary judgment or presented evidence to the trial judge that the state is barred from recovering the lost funds because of the non-mandatory nature of the statute. Moreover, the cases cited to support this argument are factually distinguishable because they show substantial compliance, where as here there apparently was no compliance at all. *See State v. Fox,* 133 S.W.2d 987, 990–91 (Tex.Civ. App.—Austin 1939, writ ref'd) (tax collector collected and deposited funds as required by statute, although not within time limits set by statute); *State v. Hatcher,* 52 S.W.2d 794, 800 (Tex. Civ.App.—Austin 1932), *rev'd on other grounds,* 125 Tex. 84, 81 S.W.2d 499 (Tex.1935) (state treasurer complied with statute to extent possible, but was allowed to plead inability to perform because volume of remittances to state treasurer rendered total statutory compliance impossible).

action; therefore, Mr. Shaw and his surety have failed to meet their summary judgment burden.

■ By way of affirmative defense, Mr. Shaw moved for summary judgment on the ground he is protected from liability by the doctrine of sovereign immunity. Specifically, Shaw contends:

All the acts performed by Ben Shaw that are the basis of Appellant's claims are acts performed pursuant to his duties as tax assessor-collector and were performed in good faith. As set out above, *there is no allegation or summary judgment proof of wrongdoing by Ben Shaw*, and there is no proof that he had any forewarning of the insolvency of Handy Andy, Inc. *To the contrary, the summary judgment evidence establishes that Shaw committed no wrongdoing*, and there was nothing he could do to forward the funds seized by the bankruptcy court. Accordingly, Ben Shaw, individually and in his official capacity, is immune from liability for negligence, as an employee in his official capacity performing a governmental function is immune from suit for the torts of officers, agents and employees.

(emphasis added) (citation omitted). We initially note that Mr. Shaw's reference to his lack of forewarning before bankruptcy, or Mr. Shaw's inability to forward the public funds frozen by the court, do not address the allegations leveled against Mr. Shaw and his surety. As discussed above, the state is alleging that Mr. Shaw failed to perform certain duties required by him as tax assessor-collector, not that he should have known of the bankruptcy, or that he failed to take the proper course of action regarding the bankruptcy. Explicitly, the state contends that weekly remittances by Shaw pursuant to article 6675a–10 would have greatly minimized the amounts of money swept into the bankruptcy proceeding and subsequently lost.

Moreover, we do not agree there is no allegation of wrongdoing or the summary judgment evidence establishes Shaw committed no wrongdoing, to the extent wrongdoing includes negligence and failure to perform statutory duties. To the contrary, the state alleged—and the summary judgment record contains no evidence negating these allegations—Shaw failed to perform his statutory duties and was negligent in supervising and managing Handy Andy, Inc. Because a genuine issue of material fact exists as to whether Mr. Shaw collected, accounted for, and remitted the funds to the state as required by law, and whether he acted reasonably in his supervision of Handy Andy, Inc., this court cannot determine that Mr. Shaw is entitled to immunity based "on his good faith performance of [his] discretionary duties." *See Travis v. City of Mesquite*, 830 S.W.2d 94, 102–03 (Tex.1992) (Cornyn, J. concurring); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.Civ. App.—San Antonio 1981, writ ref'd n.r.e.). Accordingly, we hold Mr. Shaw is not entitled to summary judgment on the basis of the doctrine of sovereign immunity.

■ The surety moved for summary judgment raising the affirmative defenses of collateral estoppel, res judicata, and election of remedies. Other than citing the general rule regarding collateral estoppel (without citation), surety cites no case law or statutory authority to support its propositions that (1) the issues involved in this case have been "fully litigated" by the bankruptcy court; (2) the state made an election of remedies and is now barred from pursuing this action against different defendants; and (3) the status quo of the parties changed in the eight years during which the bankruptcy proceedings were pending in federal court. Without supporting authority, surety has not conclusively proven all the elements of at least one of these affirmative defenses. Moreover, the state argues, and we agree, it had a duty to mitigate its potential damages by participating in the bankruptcy proceedings. Additionally, while the funds were subject to the "automatic stay" imposed by the bankruptcy court, the monies were not actually lost to the state. It was not until Handy Andy, Inc. was discharged from bankruptcy that the state actually realized a loss in excess of $325,000.

In conclusion, we hold that Mr. Shaw and his surety failed to prove conclusively all the elements of at least one of their affirmative defenses or to disprove at least one of the elements of each of the state's causes of action. Accordingly, the judgment of the trial court is reversed and the cause is remanded for further proceedings.