Hughes v. St. David's 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00197-CV







Alfred D. Hughes; J. Scott Gregson; L. Michael O'Neal; Brenda Hughes Nelson, as


Trustee for the Lance R. Hughes Management Trust; and Lance R. Hughes, as Trustee


for the Brenda Hughes Nelson Management Trust, Appellants



v.



St. David's Support Corporation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 94-05560, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







This appeal presents us with the question of whether a general partner owes a fiduciary duty
of notice to its limited partners when it sells assets under its control. Because we conclude that such a duty
exists, we will reverse the trial court's summary judgment and remand the cause for a trial on the merits.



BACKGROUND


The St. David's Health Care System, Inc., (the "System") is a nonprofit corporation that
operates St. David's Medical Center in Austin, a complex that includes St. David's Hospital. The System
is the sole shareholder of appellee, St. David's Support Corporation ("St. David's"), another nonprofit
corporation. In the early 1980's, the Board of Trustees of the System began considering an expansion of
the hospital's facilities and services, known as the East Campus Project. Included in this project were plans for the construction of two new
hospitals--a psychiatric hospital and a nursing and rehabilitation hospital.

Upon learning of the East Campus project, Alfred Hughes approached the St. David's
System proposing to arrange financing for the construction and operation of the new East Campus facilities. 
Under his proposal, Hughes and his affiliates would form (1) a master limited partnership, interests of which
would be sold to the public, and (2) operating partnerships, interests of which would be sold to physicians. 
The master partnership would fund the construction of the East Campus facilities and then lease them to
the operating partnerships, which would actually operate the two East Campus hospitals.

In 1986, the System's Board of Trustees accepted Hughes's proposal, and Hughes began
implementing it. By September of 1987, however, the System had become dissatisfied with Hughes's
financing efforts. Therefore, it decided to take over the development of the East Campus Project. 
Although the System retained Hughes's proposed organizational structure of master and operating
partnerships, it financed the construction of the East Campus facilities through the sale of bonds. To
compensate Hughes for his endeavors, the System paid Hughes $425,000. As additional compensation,
it gave Hughes and his affiliates (the "Hughes appellants") what it described at oral argument as a "royalty
interest" in the operating partnerships of the two new East Campus hospitals. We find this description
fitting.

The Hughes appellants obtained this "royalty interest" through the creation of an intricate
series of interlocking partnerships. The main controlling partnership was called St. David's East Campus,
Ltd. ("East Campus, Ltd."). The Hughes appellants owned forty-nine percent of this partnership and were
limited partners; conversely, St. David's owned fifty-one percent of the partnership and served as its
general partner.

The two East Campus hospitals were each, in turn, operated by limited partnerships--St.
David's Psychiatric Center, Ltd., and St. David's Rehabilitation and Nursing Center, Ltd. (collectively the
"operating partnerships"). Physicians were to be the limited partners of both of these partnerships. (1) East
Campus, Ltd., served as general partner of the operating partnerships and retained a one percent interest
in each of them. Thus, the Hughes appellants owned an infinitesimal part--less than one-half of one
percent--but a part nonetheless, of the operating partnerships.

In 1991, a problem arose concerning the operation of the two East Campus hospitals. 
New Medicare regulations restricted physicians' ability to participate in entities that own hospital facilities
to which those physicians refer patients. St. David's, as general partner of East Campus, Ltd., determined
that the operating partnerships were potentially in violation of these regulations (2) and devised a solution to
this problem: it would sell all operating partnership assets and then dissolve both operating partnerships.

St. David's discussed this solution in a series of meetings with the physician limited partners
of the operating partnerships and decided to follow this course of action. It is undisputed in the record,
however, that St. David's did not give the Hughes appellants notice of the impending sale or dissolutions. 
St. David's candidly admitted at oral argument that the reason it did not give the Hughes appellants prior
notice was because it was concerned they might impede or possibly stop the sale and dissolution of
operating partnerships. St. David's did not want anything to interfere with this sale because it was
convinced that continuing to operate the hospitals with physician partners was a violation of Medicare
regulations.

From the record, it appears St. David's did not hold the assets out for public bid; instead,
it bought the assets itself through private sale. Following the sale, St. David's dissolved the operating
partnerships. It then dissolved the master partnership, East Campus, Ltd., and paid the Hughes appellants
$19,765, which comprised their approximate one-half of one percent share of the sale proceeds.

The Hughes appellants were of the opinion that St. David's should have notified them of
the sale and dissolution and given them an opportunity to participate in the sale. Accordingly, they sued
St. David's for breach of fiduciary duty. (3) St. David's claimed it was not required to give notice and,
therefore, breached no duty. Both parties moved for summary judgment, and the trial court's final judgment
granted St. David's motion. The Hughes appellants bring this appeal, challenging the trial court's summary
judgment in seven points of error.


STANDARD OF REVIEW


In reviewing the trial court's grant of St. David's motion for summary judgment, we must
determine whether St. David's met its burden of showing that no genuine issue of material fact exists and
that it is entitled to judgment as a matter of law. In deciding whether St. David's met this burden, we accept
as true all evidence favorable to the Hughes appellants and indulge every reasonable inference and resolve
every doubt in their favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex. 1985). St. David's, as a defendant moving for summary judgment, has the burden of disproving at
least one essential element of each of the Hughes appellants' causes of action. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Texas Dep't of Transp. v. Shaw, 847 S.W.2d 618, 620 (Tex.
App.--San Antonio 1992, writ denied); see also Rose v. Odiorne, 795 S.W.2d 210, 213 (Tex.
App.--Austin 1990, writ denied).



DISCUSSION


The touchstone issue in this appeal is whether St. David's owed the Hughes appellants a
fiduciary duty that would have included a duty to notify them of the proposed sale of the operating
partnerships' assets. We conclude it did.

It is well established that partners are charged with a fiduciary duty. See Fitz-Gerald v.
Hull, 237 S.W.2d 256, 264-65 (Tex. 1951); Botach v. Butler & Binion, 905 S.W.2d 597, 602 (Tex.
App.--Houston [14th Dist.] 1995, writ denied). Managing partners owe their copartners the highest
fiduciary duty recognized in the law. Huffington v. Upchurch, 532 S.W.2d 576, 579 (Tex. 1976);
Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). 
Furthermore, in a limited partnership, the general partner stands in the same fiduciary capacity to the limited
partners as a trustee stands to the beneficiaries of a trust. Crenshaw, 611 S.W.2d at 890 (citing Watson
v. Limited Partners of WCKT, Ltd., 570 S.W.2d 179 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e)). 
Based on this authority, it is clear St. David's, the general partner of East Campus, Ltd., owed the Hughes
appellants, limited partners of East Campus, Ltd., a fiduciary duty.

St. David's contends, however, that even if it owed the Hughes appellants a fiduciary duty,
it had no duty to notify them of the asset sale because they were limited partners in East Campus, Ltd., and
their ownership interest in the operating partnerships was infinitesimal. While we agree that the Hughes
appellants' ownership interest was small, we conclude that they were at least entitled to notice before the
operating partnership assets were sold.

Among the duties that a partner owes its co-partners is the duty of "full disclosure of all
matters affecting the partnership." Hawthorne v. Guenther, 917 S.W.2d 924, 934 (Tex.
App.--Beaumont 1996, writ denied); Botach, 905 S.W.2d at 602. In a limited partnership, the general
partner owes the same duty of full disclosure to the limited partners. Cf. Huie v. DeShazo, 922 S.W.2d
920, 923 (Tex. 1996) ("Trustees and executors owe beneficiaries `a fiduciary duty of full disclosure of all
material facts known to them that might affect (the beneficiaries') rights.'") (quoting Montgomery v.
Kennedy, 669 S.W.2d 309, 313 (Tex. 1984)). Accordingly, St. David's as general partner was required
to disclose all material facts affecting East Campus, Ltd., to its limited partners, the Hughes appellants.

As noted above, the Hughes appellants' interest in the operating partnerships was similar
to a royalty interest. We believe this analogy is significant because a limited partner holding a royalty
interest is certainly entitled to notice before the general partner sells the underlying assets that generate the
royalty interest.

We also believe that it is highly significant that the Hughes appellants were the only party
involved in the sale and dissolutions that did not receive prior notice. Even the limited partners of the
operating partnerships were given such notice. Further, all partnerships involved in the sale of operating
partnership assets, including East Campus, Ltd., executed the sale documents. The Hughes appellants,
however, did not sign any of these documents. St. David's argues that, as general partner, it was
empowered to execute these documents on behalf of East Campus, Ltd. Unquestionably, St. David's did
have this power. However, based upon the foregoing authority and discussion, we hold that the Hughes
appellants were entitled to notice before St. David's exercised this power.



CONCLUSION


Because St. David's owed the Hughes appellants a fiduciary duty and because it breached
that duty by failing to give them prior notice of the sale of the operating partnerships' assets, we reverse the
trial court's summary judgment and remand the cause to the district court for a trial on the merits.





Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: March 6, 1997

Publish
1. 1  St. David's could not raise enough capital to operate the hospitals by selling to physicians; therefore,
the System also purchased limited partnership interests in the operating partnerships.
2. 2  Any controversy as to whether this conclusion was correct plays no part of this appeal, and no party
contends St. David's reached its conclusion out of ulterior motives.
3. 3  The Hughes appellants also brought claims against St. David's for fraud, breach of contract,
conversion, negligence, and declaratory relief. All of these claims except the fraud claim were non-suited
pursuant to a Rule 11 agreement and are not part of this appeal. We do not address the Hughes appellants'
fraud claim because the fiduciary duty issue is dispositive.



. Limited Partners of WCKT, Ltd., 570 S.W.2d 179 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e)). 
Based on this authority, it is clear St. David's, the general partner of East Campus, Ltd., owed the Hughes
appellants, limited partners of East Campus, Ltd., a fiduciary duty.

St. David's contends, however, that even if it owed the Hughes appellants a fiduciary duty,
it had no duty to notify them of the asset sale because they were limited partners in East Campus, Ltd., and
their ownership interest in the operating partnerships was infinitesimal. While we agree that the Hughes
appellants' ownership interest was small, we conclude that they were at least entitled to notice before the
operating partnership assets were sold.

Among the duties that a partner owes its co-partners is the duty of "full disclosure of all
matters affecting the partnership." Hawthorne v. Guenther, 917 S.W.2d 924, 934 (Tex.
App.--Beaumont 1996, writ denied); Botach, 905 S.W.2d at 602. In a limited partnership, the general
partner owes the same duty of full disclosure to the limited partners. Cf. Huie v. DeShazo, 922 S.W.2d
920, 923 (Tex. 1996) ("Trustees and executors owe beneficiaries `a fiduciary duty of full disclosure of all
material facts known to them that might affect (the beneficiaries') rights.'") (quoting Montgomery v.
Kennedy, 669 S.W.2d 309, 313 (Tex. 1984)). Accordingly, St. David's as general partner was required
to disclose all material facts affecting East Campus, Ltd., to its limited partners, the Hughes appellants.

As noted above, the Hughes appellants' interest in the operating partnerships was similar
to a royalty interest. We believe this analogy is significant because a limited partner holding a royalty
interest is certainly entitled to notice before the general partner sells the underlying assets that generate the
royalty interest.

We also believe that it is highly significant that the Hughes appellants were the only party
involved in the sale and dissolutions that did not receive prior notice. Even the limited partners of the
operating partnerships were given such notice. Further, all partnerships involved in the sale of operating
partnership assets, including East Campus, Ltd., executed the sale documents. The Hughes appellants,
however, did not sign any of these documents. St. David's argues that, as general partner, it was
empowered to execute these documents on behalf of East Campus, Ltd. Unquestionably, St. David's did
have this power. However, based upon the foregoing authority and discussion, we hold that the Hughes
appellants were entitled to notice before St. David's exercised this power.



CONCLUSION


Because St. David's owed the Hughes appellants a fiduciary duty and because it breached
that duty by failing to give them prior notice of the sale of the operating partnerships' assets, we reverse the
trial court's summary judgment and remand the cause to the district court for a trial on the merits.





Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: March 6, 1997

Publish
1. 1 

Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: March 6, 1997

Publish
1. 1G>






Alfred D. Hughes; J. Scott Gregson; L. Michael O'Neal; Brenda Hughes Nelson, as


Trustee for the Lance R. Hughes Management Trust; and Lance R. Hughes, as Trustee


for the Brenda Hughes Nelson Management Trust, Appellants



v.



St. David's Support Corporation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 94-05560, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







This appeal presents us with the question of whether a general partner owes a fiduciary duty
of notice to its limited partners when it sells assets under its control. Because we conclude that such a duty
exists, we will reverse the trial court's summary judgment and remand the cause for a trial on the merits.



BACKGROUND


The St. David's Health Care System, Inc., (the "System") is a nonprofit corporation that
operates St. David's Medical Center in Austin, a complex that includes St. David's Hospital. The System
is the sole shareholder of appellee, St. David's Support Corporation ("St. David's"), another nonprofit
corporation. In the early 1980's, the Board of Trustees of the System began considering an expansion of
the hospital's facilities and services, known as the East Campus Project. Included in this project were plans for the construction of two new
hospitals--a psychiatric hospital and a nursing and rehabilitation hospital.

Upon learning of the East Campus project, Alfred Hughes approached the St. David's
System proposing to arrange financing for the construction and operation of the new East Campus facilities. 
Under his proposal, Hughes and his affiliates would form (1) a master limited partnership, interests of which
would be sold to the public, and (2) operating partnerships, interests of which would be sold to physicians. 
The master partnership would fund the construction of the East Campus facilities and then lease them to
the operating partnerships, which would actually operate the two East Campus hospitals.

In 1986, the System's Board of Trustees accepted Hughes's proposal, and Hughes began
implementing it. By September of 1987, however, the System had become dissatisfied with Hughes's
financing efforts. Therefore, it decided to take over the development of the East Campus Project. 
Although the System retained Hughes's proposed organizational structure of master and operating
partnerships, it financed the construction of the East Campus facilities through the sale of bonds. To
compensate Hughes for his endeavors, the System paid Hughes $425,000. As additional compensation,
it gave Hughes and his affiliates (the "Hughes appellants") what it described at oral argument as a "royalty
interest" in the operating partnerships of the two new East Campus hospitals. We find this description
fitting.

The Hughes appellants obtained this "royalty interest" through the creation of an intricate
series of interlocking partnerships. The main controlling partnership was called St. David's East Campus,
Ltd. ("East Campus, Ltd."). The Hughes appellants owned forty-nine percent of this partnership and were
limited partners; conversely, St. David's owned fifty-one percent of the partnership and served as its
general partner.

The two East Campus hospitals were each, in turn, operated by limited partnerships--St.
David's Psychiatric Center, Ltd., and St. David's Rehabilitation and Nursing Center, Ltd. (collectively the
"operating partnerships"). Physicians were to be the limited partners of both of these partnerships. (1) East
Campus, Ltd., served as general partner of the operating partnerships and retained a one percent interest
in each of them. Thus, the Hughes appellants owned an infinitesimal part--less than one-half of one
percent--but a part nonetheless, of the operating partnerships.

In 1991, a problem arose concerning the operation of the two East Campus hospitals. 
New Medicare regulations restricted physicians' ability to participate in entities that own hospital facilities
to which those physicians refer patients. St. David's, as general partner of East Campus, Ltd., determined
that the operating partnerships were potentially in violation of these regulations (2) and devised a solution to
this problem: it would sell all operating partnership assets and then dissolve both operating partnerships.

St. David's discussed this solution in a series of meetings with the physician limited partners
of the operating partnerships and decided to follow this course of action. It is undisputed in the record,
however, that St. David's did not give the Hughes appellants notice of the impending sale or dissolutions. 
St. David's candidly admitted at oral argument that the reason it did not give the Hughes appellants prior
notice was because it was concerned they might impede or possibly stop the sale and dissolution of
operating partnerships. St. David's did not want anything to interfere with this sale because it was
convinced that continuing to operate the hospitals with physician partners was a violation of Medicare
regulations.

From the record, it appears St. David's did not hold the assets out for public bid; instead,
it bought the assets itself through private sale. Following the sale, St. David's dissolved the operating
partnerships. It then dissolved the master partnership, East Campus, Ltd., and paid the Hughes appellants
$19,765, which comprised their approximate one-half of one percent share of the sale proceeds.

The Hughes appellants were of the opinion that St. David's should have notified them of
the sale and dissolution and given them an opportunity to participate in the sale. Accordingly, they sued
St. David's for breach of fiduciary duty. (3) St. David's claimed it was not required to give notice and,
therefore, breached no duty. Both parties moved for summary judgment, and the trial court's final judgment
granted St. David's motion. The Hughes appellants bring this appeal, challenging the trial court's summary
judgment in seven points of error.


STANDARD OF REVIEW


In reviewing the trial court's grant of St. David's motion for summary judgment, we must
determine whether St. David's met its burden of showing that no genuine issue of material fact exists and
that it is entitled to judgment as a matter of law. In deciding whether St. David's met this burden, we accept
as true all evidence favorable to the Hughes appellants and indulge every reasonable inference and resolve
every doubt in their favor. See Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49
(Tex. 1985). St. David's, as a defendant moving for summary judgment, has the burden of disproving at
least one essential element of each of the Hughes appellants' causes of action. Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Texas Dep't of Transp. v. Shaw, 847 S.W.2d 618, 620 (Tex.
App.--San Antonio 1992, writ denied); see also Rose v. Odiorne, 795 S.W.2d 210, 213 (Tex.
App.--Austin 1990, writ denied).



DISCUSSION


The touchstone issue in this appeal is whether St. David's owed the Hughes appellants a
fiduciary duty that would have included a duty to notify them of the proposed sale of the operating
partnerships' assets. We conclude it did.

It is well established that partners are charged with a fiduciary duty. See Fitz-Gerald v.
Hull, 237 S.W.2d 256, 264-65 (Tex. 1951); Botach v. Butler & Binion, 905 S.W.2d 597, 602 (Tex.
App.--Houston [14th Dist.] 1995, writ denied). Managing partners owe their copartners the highest
fiduciary duty recognized in the law. Huffington v. Upchurch, 532 S.W.2d 576, 579 (Tex. 1976);
Crenshaw v. Swenson, 611 S.W.2d 886, 890 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.). 
Furthermore, in a limited partnership, the general partner stands in the same fiduciary capacity to the limited
partners as a trustee stands to the beneficiaries of a trust. Crenshaw, 611 S.W.2d at 890 (citing Watson
v. Limited Partners of WCKT, Ltd., 570 S.W.2d 179 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e)). 
Based on this authority, it is clear St. David's, the general partner of East Campus, Ltd., owed the Hughes
appellants, limited partners of East Campus, Ltd., a fiduciary duty.

St. David's contends, however, that even if it owed the Hughes appellants a fiduciary duty,
it had no duty to notify them of the asset sale because they were limited partners in East Campus, Ltd., and
their ownership interest in the operating partnerships was infinitesimal. While we agree that the Hughes
appellants' ownership interest was small, we conclude that they were at least entitled to notice before the
operating partnership assets were sold.

Among the duties that a partner owes its co-partners is the duty of "full disclosure of all
matters affecting the partnership." Hawthorne v. Guenther, 917 S.W.2d 924, 934 (Tex.
App.--Beaumont 1996, writ denied); Botach, 905 S.W.2d at 602. In a limited partnership, the general
partner owes the same duty of full disclosure to the limited partners. Cf. Huie v. DeShazo, 922 S.W.2d
920, 923 (Tex. 1996) ("Trustees and executors owe beneficiaries `a fiduciary duty of full disclosure of all
material facts known to them that might affect (the beneficiaries') rights.'") (quoting Montgomery v.
Kennedy, 669 S.W.2d 309, 313 (Tex. 1984)). Accordingly, St. David's as general partner was required
to disclose all material facts affecting East Campus, Ltd., to its limited partners, the Hughes appellants.

As noted above, the Hughes appellants' interest in the operating partnerships was similar
to a royalty interest. We believe this analogy is significant because a limited partner holding a royalty
interest is certainly entitled to notice before the general partner sells the underlying assets that generate the
royalty interest.

We also believe that it is highly significant that the Hughes appellants were the only party
involved in the sale and dissolutions that did not receive prior notice. Even the limited partners of the
operating partnerships were given such notice. Further, all partnerships involved in the sale of operating
partnership assets, including East Campus, Ltd., executed the sale documents. The Hughes appellants,
however, did not sign any of these documents. St. David's argues that, as general partner, it was
empowered to execute these documents on behalf of East Campus, Ltd. Unquestionably, St. David's did
have this power. However, based upon the foregoing authority and discussion, we hold that the Hughes
appellants were entitled to notice before St. David's exercised this power.



CONCLUSION


Because St. David's owed the Hughes appellants a fiduciary duty and because it breached
that duty by failing to give them prior notice of the sale of the operating partnerships' assets, we reverse the
trial court's summary judgment and remand the cause to the district court for a trial on the merits.





Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: March 6, 1997

Publish
1. 1  St. David's could not raise enough capital to operate the hospitals by selling to physicians; therefore,
the System also purchased limited partnership interests in the operating partnerships.
2. 2  Any controversy as to whether this conclusion was correct plays no part of this appeal, and no party
contends St. David's reached its conclusion out of ulterior motives.
3. 3  The Hughes appellants also brought claims against St. David's for fraud, breach of contract,
conversion, negligence, and declaratory relief. All of these claims except the fraud claim were non-suited
pursuant to a Rule 11 agreement and are not part of this appeal. We do not address the Hughes appellants'
fraud claim because the fiduciary duty issue is dispositive.



. Limited Partners of WCKT, Ltd., 570 S.W.2d 179 (Tex. Civ. App.--Austin 1978, writ ref'd n.r.e)). 
Based on this authority, it is clear St. David's, the general partner of East Campus, Ltd., owed the Hughes
appellants, limited partners of East Campus, Ltd., a fiduciary duty.

St. David's contends, however, that even if it owed the Hughes appellants a fiduciary duty,
it had no duty to notify them of the asset sale because they were limited partners in East Campus, Ltd., and
their ownership interest in the operating partnerships was infinitesimal. While we agree that the Hughes
appellants' ownership interest was small, we conclude that they were at least entitled to notice before the
operating partnership assets were sold.

Among the duties that a partner owes its co-partners is the duty of "full disclosure of all
matters affecting the partnership." Hawthorne v. Guenther, 917 S.W.2d 924, 934 (Tex.
App.--Beaumont 1996, writ denied); Botach, 905 S.W.2d at 602. In a limited partnership, the general
partner owes the same duty of full disclosure to the limited partners. Cf. Huie v. DeShazo, 922 S.W.2d
920, 923 (Tex. 1996) ("Trustees and executors owe beneficiaries `a fiduciary duty of full disclosure of all
material facts known to them that might affect (the beneficiaries') rights.'") (quoting Montgomery v.
Kennedy, 669 S.W.2d 309, 313 (Tex. 1984)). Accordingly, St. David's as general partner was required
to disclose all material facts affecting East Campus, Ltd., to its limited partners, the Hughes appellants.

As noted above, the Hughes appellants' interest in the operating partnerships was similar
to a royalty interest. We believe this analogy is significant because a limited partner holding a royalty
interest is certainly entitled to notice before the general partner sells the underlying assets that generate the
royalty interest.

We also believe that it is highly significant that the Hughes appellants were the only party
involved in the sale and dissolutions that did not receive prior notice. Even the limited partners of the
operating partnerships were given such notice. Further, all partnerships involved in the sale of operating
partnership assets, including East Campus, Ltd., executed the sale documents. The Hughes appellants,
however, did not sign any of these documents. St. David's argues that, as general partner, it was
empowered to execute these documents on behalf of East Campus, Ltd. Unquestionably, St. David's did
have this power. However, based upon the foregoing authority and discussion, we hold that the Hughes
appellants were entitled to notice before St. David's exercised this power.



CONCLUSION


Because St. David's owed the Hughes appellants a fiduciary duty and because it breached
that duty by failing to give them prior notice of the sale of the operating partnerships' assets, we reverse the
trial court's summary judgment and remand the cause to the district court for a trial on the merits.





Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Remanded

Filed: March 6, 1997

Publish
1. 1857 S.W.2d at 916. We agree with the court of appeals.
At the outset, we emphasize the limited nature of our present inquiry: we are focusing only on the type of evidence required to support an award of mental anguish damages in cases in which recovery is allowed. Nonetheless, we find it helpful to begin with a historical overview of mental anguish damages before addressing the legal sufficiency of the Woodruffs' evidence of their mental anguish.
The history of